IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 05-369 |
| v. | : | |
| | : | CIVIL ACTION |
| JOSEPH NOBLE | : | NO. 09-594 |

MEMORANDUM

Bartle, C.J.                                                    February 23, 2010

Before the court is the pro se motion of Joseph Noble
("Noble") under 28 U.S.C. § 2255 to vacate, set aside, or correct
his sentence.

On June 30, 2005, Noble was charged by grand jury
indictment with one count of kidnapping, in violation of 18
U.S.C. § 1201(a)(1), and one count of interstate domestic
violence, in violation of 18 U.S.C. § 2261(a)(1). On January 12,
2006, a jury found Noble guilty of kidnapping but not guilty of
interstate domestic violence. He was sentenced to 84 months'
imprisonment. On September 25, 2007, our Court of Appeals
affirmed the conviction and sentence. United States v. Noble,
251 Fed. Appx. 792, 2007 WL 3133065 (3d Cir. 2007). Noble
thereafter filed his § 2255 motion. The court appointed counsel
for Noble and held several evidentiary hearings.

Noble raises a number of contentions: (1) deficiencies
in his grand jury indictment violate his rights under the Fifth
and Sixth Amendments; (2) the court's jury instructions
constructively amended the grand jury indictment, thereby further

violating his Fifth and Sixth Amendment rights; (3) trial counsel
was ineffective under the standard set forth by the United States
Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984);
and (4) appellate counsel was similarly ineffective.

I.

The underlying facts, as established through evidence
at trial, are as follows. On November 13, 2004, Noble threatened
his wife, Joanne Noble ("Joanne"), during an argument, prompting
her to flee their home and stay with her stepsister, Krislyn Ruth
("Ruth"), in South Philadelphia. On the night of November 16,
2004, Noble drove to Ruth's house where he discovered the car of
Jack Bell ("Bell") parked outside. Believing Bell and Joanne
were having an affair, Noble became enraged and proceeded to
smash the windows of Bell's car and call for Joanne and Bell to
come out of the house. They did not do so.

The next day, November 17, 2004, Noble called Joanne
claiming their five-year old daughter and two-year old son were
sick and suggested that she meet with him. Joanne agreed, and
Noble drove to Ruth's house with the two children. Upon his
arrival, Noble invited Joanne to join him and the children for
lunch. Joanne testified that, when she refused his invitation,
Noble lifted her off the ground and carried her to the car where,
despite her struggle, he forced her into the passenger seat,
placed their daughter on her lap, and drove off. Noble drove at
a high rate of speed, ran through red lights, and swerved onto
the wrong side of the road. Though police initially chased

Noble, they were unable to stop his vehicle. Noble continued at a high rate of speed as he crossed the Walt Whitman Bridge and entered New Jersey. Joanne testified that, while speeding erratically, Noble was screaming at her and threatening to smash the car into a wall so it could be the family's "last time together."

Upon entering New Jersey, Noble slowed to a normal rate of speed and made multiple stops for gas and food. According to Joanne's testimony, Noble wanted to ensure that he had a full tank of gas to aid his escape in the event that he was again pursued by police. Noble also avoided use of credit cards and disassembled his cellular phone to avoid being tracked by law enforcement. When making such stops, Noble cautioned Joanne not to attempt to communicate with anyone or otherwise indicate that she was being held against her will. Joanne testified that she complied with Noble's demand because, due to Noble's history of violent behavior, she feared for her safety and that of their children.

Eventually the family arrived at a motel in Kingston, New York. Noble backed the car into the parking lot so the rear license plate could not be seen, and again paid in cash to avoid detection. Joanne testified that Noble twice forced her to have sexual intercourse with him during their brief stay at the motel. Although she communicated to him that she did not wish to be intimate, she testified that she did not physically struggle. According to Joanne, she feared that physical resistance would

-3-

only provoke Noble further and would alarm her young children, who were in the same motel room at the time.

The next morning, Noble and his family left New York to return to Philadelphia. On the way, Noble came to believe that the police had issued a warrant for his arrest. This prompted him to drive directly to the office of his attorney, Arthur Jarrett ("Jarrett"). When Joanne arrived at Jarrett's office with Noble, she was taken aside and put in contact with a detective who suggested she go to Thomas Jefferson Hospital for a physical examination in relation to her accusations of sexual assault.

Joanne traveled to the hospital along with a police escort. While there, Noble appeared unannounced and confronted Joanne in a hallway. He was promptly arrested. Joanne was later interviewed by police who took photographs of a lump on her head and bruising on her arms which she had allegedly suffered when Noble forced her into his car on November 17.

Noble was represented at trial by attorneys Mark Wilson and Kathy Henry. Ms. Henry's primary role was to cross-examine Joanne regarding her above-mentioned testimony. In his defense, Noble presented testimony from a number of witnesses in an attempt to show that Joanne was romantically involved with Bell before and after November 17, 2004 and that she fabricated or exaggerated the kidnapping and assault allegations. At the evidentiary hearing on his § 2255 motion, defense counsel stated that their trial strategy was to attack Joanne's credibility and

prove that she voluntarily accompanied Noble on the trip to New York.

II.

A.

Noble first contends in his § 2255 motion that his grand jury indictment was defective so as to deny him his Sixth Amendment right to be informed of the nature and cause of the accusations against him and his Fifth Amendment right to be charged by grand jury indictment. He focuses on the fact that the indictment did not state that the kidnapping was "for ransom or reward or otherwise," although this phrase appears in the text of the statute under which Noble was charged, 18 U.S.C. § 1201(a)(1).[1] According to Noble, the omitted language forms an essential element of the crime of kidnapping under § 1201(a)(1), and the indictment therefore should have been dismissed for

---

1. At the time Noble was charged with kidnapping, § 1201(a)(1) provided:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds *for ransom or reward or otherwise* any person, except in the case of a minor by the parent thereof, when ... the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary if the person was alive when the transportation began; ... shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201(a)(1) (amended 2006) (emphasis added).

failure state an offense under Rule 12(b)(3)(B) of the Federal
Rules of Criminal Procedure.[2]

Questions regarding the sufficiency of a grand jury
indictment touch upon fundamental constitutional rights.  See
Russell v. United States, 369 U.S. 749, 760-61 (1962).  However,
a conviction will not be disturbed merely because of minor
deficiencies in the charging document.  Id. at 763.  In Russell,
the Court identified the important criteria by which the
sufficiency of an indictment is to be measured:  (1) it must
"contain[] the elements of the offense intended to be charged"
and "apprise[] the defendant of what he must be prepared to
meet"; and (2) it must protect him from future proceedings by
"show[ing] with accuracy to what extent he may plead a former
acquittal or conviction."  Id. at 763-64; see also United States
v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989).

First, we consider whether the indictment apprised
Noble of the charges against him.  See United States v. Knox Coal
Co., 347 F.2d 33, 37 (3d Cir. 1965).  The indictment charges
that:

> On or about November 17, 2004, in
> Philadelphia, in the Eastern District of
> Pennsylvania and elsewhere, defendant Joseph
> Noble, a/k/a/ "Joseph Soto," knowingly and
> intentionally seized, confined, kidnaped,
> abducted, and carried away and held his
> estranged spouse, [Joanne Noble], and then
> willfully transported her in interstate
> commerce to Kingston, New York.  In violation

---

2.  This rule allows a defendant to file a motion alleging "that
the indictment ...  fails ... to state an offense."  Fed. R.
Crim. P. 12(b)(3)(B).

of Title 18, United States Code, Section
1201(a)(1).

Noble claims that the "purpose" of the kidnapping is an essential
element of the offense, and by omitting the language "for ransom
or reward or otherwise" he was not adequately apprised of the
charges against him.  We disagree.

The Supreme Court has interpreted the word "otherwise"
as encompassing any purpose at all.  See Gooch v. United States,
297 U.S. 124, 127-28 (1936); United States v. Healy, 376 U.S. 75,
81-83 (1964).  Because of this expansive construction, the
kidnapping statute can be violated regardless of the defendant's
motivation, and thus the "purpose" language does not form an
essential element of kidnapping under 18 U.S.C. § 1201.  See,
e.g., Gawne v. United States, 409 F.2d 1399, 1403 (9th Cir.
1969);  United States v. Martell, 335 F.2d 764, 766 (4th Cir.
1964); Hayes v. United States, 296 F.2d 657, 665-67 (8th Cir.
1961); Clinton v. United States, 260 F.2d 824, 825 (5th Cir.
1958).  Such was the result in United States v. Lutz, where Our
Court of Appeals held that an indictment charging kidnapping
under that section is not deficient merely because it omitted the
language "for ransom or reward or otherwise."  420 F.2d 414, 416
(3d Cir. 1970).

As in Lutz, Noble's indictment is constitutionally
sufficient.  It clearly charged Noble with the offense of
kidnapping his wife and transporting her in interstate commerce.
To include a statement that he held her for "ransom or reward or

otherwise" would have added nothing to his ability to prepare a
defense.

Noble's indictment also satisfies the second criteria
set forth in Russell.  By specifying the date on which the
offense took place as well as the geographic locations and
parties involved, Noble's indictment was specific enough to avoid
any danger of double jeopardy.  See Virgin Islands v. Moolenaar,
133 F.3d 246, 250 (3d Cir. 1998).

Finding no defect in the indictment by which Noble was
charged, we conclude that Noble's Fifth and Sixth Amendment
rights were not violated.

B.

Noble next contends this court constructively amended
his indictment by referencing the § 1201(a)(1) "ransom or reward
or otherwise" language in the jury instructions, thereby
violating the fundamental grand jury guarantee of the Fifth
Amendment.

An indictment is constructively amended when jury
instructions "broaden[] the possible bases for conviction from
that which appeared in the indictment."  United States v. Lee,
359 F.3d 194, 208 (3d Cir. 2004).  A constructive amendment
deprives a defendant of his right to be tried only for those
offenses charged by a grand jury, and therefore "constitutes 'a
per se violation of the fifth amendment's grand jury clause.'"
United States v. McKee, 506 F.3d 225, 229 (3d Cir. 2007) (quoting

United States v. Syme, 276 F.3d 131, 148 (3d Cir. 2002)); see also Stirone v. United States, 361 U.S. 212, 218-19 (1960).

The jury instructions given by this court included the following:

> Count 1 of the indictment charges that on or about November 17, 2004, the defendant, Joseph Noble, violated a federal law by knowingly and intentionally seizing, confining, kidnapping, abducting, or carrying away and holding for ransom or reward or otherwise, his spouse, Joanne Noble, and willfully transporting her in interstate commerce ... .
>
> [T]he government must prove ... beyond a reasonable doubt ... the defendant held Joanne Noble for ransom, reward or other benefit or reason.
>
> The phrase "and holds for ransom or reward or otherwise" means to detain a person for anything the defendant considers to be of benefit or to have value. Such benefit is not limited to money or any measurable or material item. A benefit is any legal or illegal object of the kidnapping which the perpetrator might consider sufficient motive to induce him to undertake the kidnapping. Thus, the government must prove beyond a reasonable doubt that the defendant, Joseph Noble, held Joanne Noble for ransom or reward or otherwise.

(Trial Tr. 53-55, Jan. 11, 2006.) Contrary to Noble's allegations, these jury instructions did not constructively amend his indictment. Count one of the indictment charges Noble with kidnapping his wife in violation of 18 U.S.C. § 1201(a)(1). That statute requires that the victim be held "for ransom or reward or otherwise," the word "otherwise" meaning any purpose at all. See e.g., Gooch, 297 U.S. at 127; Healy, 376 U.S. at 81-83. Therefore, the indictment, though it omitted the "purpose"

-9-

language of § 1201(a)(1), contemplated that Noble be charged with kidnapping and holding his wife for any purpose, legal or illegal. Considering the expansiveness of this allegation, it cannot be said that the jury instructions added to or otherwise broadened the charge as set forth in the indictment.

C.

Next, Noble alleges ineffective assistance of counsel under the standard set forth in Strickland v. Washington. 466 U.S. at 687. Noble contends that counsel was ineffective for: (1) denying him the right to testify on his own behalf; (2) failing to challenge his indictment on the ground that it lacked the "purpose" language of § 1201(a)(1); (3) neglecting to investigate his mental health at the time of the kidnapping; and (4) inadequately cross-examining Joanne at trial.

Under the Strickland standard, Noble bears the burden of proving that: (1) counsel's performance was deficient; and (2) he suffered prejudice as a result. Id.; United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989). The first prong requires that "[counsel's] performance was, under all the circumstances, unreasonable under prevailing professional norms." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Our scrutiny of counsel's performance is highly deferential in that we presume counsel's actions were undertaken in accordance with professional standards and as part of a "sound trial strategy." Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Second, to satisfy the prejudice prong, Noble must show

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome."  Id.

First, Noble alleges that trial counsel denied him the right to testify on his own behalf.  According to Noble, he alerted Mr. Wilson and Ms. Henry that he wished to testify, but they nevertheless failed to call Noble as a witness.

A criminal defendant has a constitutional right to testify on his own behalf at trial, and this right can only be waived by the defendant himself.  See Rock v. Arkansas, 483 U.S. 44, 49-53 (1987); Jones v. Barnes, 463 U.S. 745, 751 (1983). However, "a trial court has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived that right voluntarily."  United States v. Pennycooke, 65 F.3d 9, 11 (3d Cir. 1995).

Although Noble did not testify at trial, he was aware of his right to do so.  As Noble notes in his reply to the Government's response to his § 2255 motion, the court informed Noble of his right to testify on his own behalf at trial, and Noble acknowledged that he understood it was his decision whether or not to do so.  Furthermore, during the evidentiary hearing on October 21 and 27, 2009, Noble presented no credible evidence demonstrating that his experienced defense counsel unilaterally prohibited him from testifying at trial.  As both Mr. Wilson and

-11-

Ms. Henry testified during the hearing, they counseled Noble against taking the stand because they believed it would be detrimental to his case.  Despite this reservation, however, both attorneys stated that they would not have stopped Noble from testifying if he chose to do so.

Second, Noble contends that both trial counsel and appellate counsel were ineffective for failing to challenge:  (1) count one of his indictment on the ground that it was defective by not including the language "for ransom or reward or otherwise"; and (2) the court's alleged constructive amendment to that count during jury instruction.  We have already determined that count one was valid despite the absence of this language and the court did not constructively amend the indictment.  Accordingly, Noble suffered no prejudice and he cannot establish ineffective assistance of either trial or appellate counsel on this issue.

Third, Noble alleges that trial counsel failed to investigate thoroughly his history of mental health problems.  According to Noble, he lost the opportunity to present a defense of insanity or create reasonable doubt as to the government's ability to establish the mens rea element of his offense.  We recognize that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at 690-91.  Nevertheless, the adequacy of counsel's investigation is not dispositive—a petitioner is not entitled to relief unless he

can prove that he suffered prejudice.  <u>Strickland</u>, 466 U.S. at
694.  Therefore, we must consider whether there is a reasonable
probability that the outcome of Noble's trial would have been
different had counsel investigated further into his mental health
history.

        The federal insanity defense, as set forth in 18
U.S.C. § 17,[3] places on a defendant the burden of proving by
clear and convincing evidence that:  (1) he suffered from a
mental disease or defect at the time of the commission of the
acts constituting the offense; and (2) this mental disease or
defect rendered him unable to "appreciate the nature and quality
or the wrongfulness of his acts."  18 U.S.C. § 17(a).[4]  Thus, in

_____

3.  The statute provides,

            (a) Affirmative defense.--It is an
            affirmative defense to a prosecution under
            any Federal statute that, at the time of the
            commission of the acts constituting the
            offense, the defendant, as a result of a
            severe mental disease or defect, was unable
            to appreciate the nature and quality or the
            wrongfulness of his acts.  Mental disease or
            defect does not otherwise constitute a
            defense.

            (b) Burden of proof.--The defendant has the
            burden of proving the defense of insanity by
            clear and convincing evidence.

18 U.S.C. § 17.

4.  For the purposes of 18 U.S.C. § 17(a), the term
"wrongfulness" refers to "objective societal or public standards
of moral wrongfulness, not the defendant's subjective personal
standards of moral wrongfulness."  <u>United States v. Ewing</u>, 494
F.3d 607, 621 (7th Cir. 2007); <u>see</u> <u>also</u> <u>Third Circuit Model</u>
                                            (continued...)

order to show prejudice under Strickland, Noble must demonstrate that, but for counsel's failure to investigate, it is reasonably probable that Noble would have successfully proven by clear and convincing evidence that a mental disease or defect at the time of the kidnapping rendered him unable to appreciate the nature and quality or the wrongfulness of his actions. This, Noble cannot do.

Evidence at trial showed that Noble clearly recognized the wrongfulness of his actions because he went to elaborate lengths to avoid being captured by law enforcement. According to Joanne's testimony, Noble disassembled his cellular telephone and paid for food and gas with cash for the specific purpose of preventing police from tracing his movement. When he arrived at the motel in New York, Noble strategically parked his car in such a way so as to conceal his license plate and avoid detection. These actions clearly demonstrate that Noble was able to appreciate the wrongfulness of his behavior, and it is therefore not reasonably probable that counsel's further investigation would have allowed Noble successfully to invoke an insanity defense.

Noble also alleges that a proper investigation by counsel would have uncovered evidence sufficient to prove that he lacked the requisite mens rea for kidnapping under § 1201(a)(1), that is, that he did not act knowingly and willfully. 18 U.S.C.

4.(...continued)
Criminal Jury Instructions, § 8.06 (2009).

§ 1201(a)(1); <u>United States v. Osborne</u>, 68 F.3d 94, 100 (1995). Again, to show prejudice under <u>Strickland</u>, Noble must demonstrate that, had counsel investigated more thoroughly, it is reasonably probable they would have discovered evidence sufficient to negate the mens rea for kidnapping.

Evidence of mental abnormality is admissible to show that a defendant lacked the requisite intent to commit an offense. <u>United States v. Pohlot</u>, 827 F.2d 889, 897 (3d Cir. 1987). However, "[o]nly in the rare case ... will even a legally insane defendant actually lack the requisite mens rea purely because of mental defect." <u>Id.</u> at 900. Accordingly, the court in <u>Pohlot</u> cautioned that such evidence should be admitted "only when, if believed, it would support a legally acceptable theory of lack of mens rea." <u>Id.</u> at 905-06.

At the evidentiary hearing on January 8, 2010, Noble presented the testimony of Dr. John Ouligian, a forensic psychiatrist. Dr. Ouligian provided his opinion that Noble, at the time he kidnapped his wife, was suffering from untreated chronic Post Traumatic Stress Disorder, Klonopin withdrawal, and Major Depressive Disorder with psychotic features.[5] Dr. Ouligian based his opinion, in part, on information told to him by Noble,

---

5. During cross-examination, however, Dr. Ouligian admitted that he was unable to say conclusively that Noble was suffering from Klonopin withdrawal on the day of the kidnapping. Dr. Ouligian realized that he did not have any information as to when Noble had allegedly been given Klonopin, and he therefore could not determine whether Klonopin withdrawal symptoms, if any, were present at that time.

including Noble's assertion that he carried out the kidnapping under the delusion that his past sexual abusers were "coming after" his family.[6]

The mens rea of "knowingly" is defined as acting with an awareness of the nature of one's actions and of the surrounding facts and circumstances as specified in the charged offense. Third Circuit Model Criminal Jury Instructions, § 5.02 (2009). In contrast, to act willfully a defendant must act with a purpose to disobey or disregard the law, that is, he must "act with the knowledge that his conduct is unlawful." Bryan v. United States, 524 U.S. 184, 192 (1998); Third Circuit Model Criminal Jury Instructions, § 5.05 (2009).

Even if we were to accept Dr. Ouligian's opinion, it cannot negate the evidence that Noble acted knowingly and willfully in seizing, holding, and transporting his unconsenting wife in interstate commerce. See 18 U.S.C. § 1201(a)(1). His erratic driving, continually filling his gas tank in the event he was again pursued by police, using cash and disassembling his cellular phone to avoid being traced by law enforcement, threatening Joanne not to alert anyone that she was being held against her will, and parking his car so as to obscure the license plate all demonstrate that he was fully cognizant of the

_____

6. Noble's claim that he kidnapped his wife under the delusion that it was necessary to save her and their children from sexual predators appears for the first time in the memorandum in support of his § 2255 motion. Ms. Henry testified at the evidentiary hearing that Noble never informed defense counsel of this story at or before trial.

nature of his actions, that he was aware of the facts and
circumstances, and that he recognized the unlawful nature of his
conduct.  This is all the statute requires, and Noble's alleged
motivation is irrelevant.

Because Dr. Ouligian's opinion, if believed, is
insufficient to negate the mens rea for kidnapping under
§ 1201(a)(1), his testimony would likely have been excluded at
trial.  See Pohlot, 827 F.2d at 905-06.  It is therefore not
reasonably probable that the verdict would have been different
but for counsel's failure to further investigate Noble's mental
health.  Accordingly, Noble suffered no prejudice and is not
entitled to relief on this issue.

Finally, Noble claims that trial counsel was
ineffective in cross-examining Joanne.  According to Noble,
counsel failed to:  (1) question Joanne adequately and offer
evidence regarding her alleged opportunity to exit Noble's car
before crossing the border between Pennsylvania and New Jersey;
(2) ask Joanne whether she had placed Klonopin in Noble's tea
without his knowledge; and (3) investigate Joanne's then-pending
criminal drug charges and use those charges to impeach Joanne at
trial.

Noble contends that statements by Joanne recorded in an
FBI 302 form demonstrated that she stayed with Noble under her
own volition when he crossed from Pennsylvania into New Jersey.
On the contrary, in the 302, Joanne stated only that while Noble
was driving through Philadelphia at a high rate of speed, he was

stopped briefly at a red light where he proceeded to blow his horn and force other vehicles into the center of the intersection so that he could continue to flee from police.  Not only is it unclear whether Joanne herself could have escaped from the car during this brief pause in an otherwise dangerous pursuit, she testified at trial that she was concerned for the safety of her children and would not have left them alone in the car with Noble.

During the evidentiary hearing, Ms. Henry stated that she concluded that the 302 statements were consistent with Joanne's testimony at trial, and that questioning her regarding those statements would have been counterproductive for two reasons:  (1) it would have elicited testimony that Joanne was afraid that Noble would harm the children; and (2) questions regarding her ability to "escape" would contradict the main theory of the defense, which was that Joanne accompanied Noble willingly on their trip to New York.  Based on this testimony, we find that Ms. Henry's decision not to question Joanne regarding these statements was part of a "sound trial strategy," and her performance therefore cannot be considered deficient under the Strickland standard.

Noble also points to statements made by Joanne in a voice recording which she left on the answering machine of Mr. Wilson.  In it, Joanne states that there was at least one occasion during which she could have exited the car, but she didn't want to leave her children.  This statement is consistent

with her testimony at trial, in which she said that, although Noble stopped the car at a rest stop, she was afraid to run or seek help because she did not want to leave her children and feared that it would only provoke Noble.  Furthermore, Joanne did not specify in the recording when she had the opportunity to exit the car, and we will not assume, as Noble suggests, that this opportunity occurred prior to the car crossing the border from Pennsylvania into New Jersey.  Accordingly, it was not unreasonable for Ms. Henry to decide not to question Joanne about these statements.

Next, Noble contends that counsel was ineffective for failing to cross-examine Joanne regarding her allegedly putting Klonopin into his tea without his knowledge.  Noble argues that such evidence would support a theory that he was suffering from Klonopin withdrawal at the time of the kidnapping.  When asked during the evidentiary hearing why Joanne was not asked about this during cross-examination, Mr. Wilson stated that he had no information regarding the dosage of Klonopin which Noble allegedly ingested or when the alleged drugging took place. Without this information, he felt it would be impossible to demonstrate that Noble was suffering from the effects of Klonopin at the time of the kidnapping.

In light of counsel's testimony, we find the decision not to cross-examine Joanne on this issue to be reasonable.  Even Noble's own psychiatric expert, Dr. Ouligian, testified that, without knowing how much of the drug was ingested and the date on

which such ingestion took place, it would be impossible to conclude that Noble was suffering from the effects of Klonopin at the time of the kidnapping.  Furthermore, as discussed above, even if such information could have been obtained it would not have negated the willfulness of Noble's actions.[7]

Finally, as for Noble's contention regarding evidence of the drug charges against Joanne, we find Noble is unable to show that he suffered prejudice as required by Strickland. Because Joanne had not yet been convicted of any crimes at the time of Noble's trial, it is likely that evidence of her pending criminal charges would have been excluded.  See Fed. R. Evid. 609, 403.  Even if we were to assume that such evidence would have been admitted, however, Noble is still unable to establish prejudice.  As previously discussed by both this court in our memorandum dismissing Noble's motion for a new trial, and by our Court of Appeals in its opinion affirming our decision, it is not reasonably probable that Noble would have been acquitted of kidnapping but for counsel's failure to uncover Joanne's outstanding criminal charges.[8]

---

7.  In his post hearing memorandum, Noble seems to also suggest that questioning Joanne during cross-examination regarding her allegedly drugging him would have laid an evidentiary foundation to allow subsequent witnesses to testify that Joanne told them that she had given Klonopin to Noble without his knowledge. However, such testimony from those subsequent witnesses would be inadmissible hearsay regardless of whether counsel's questioning provided Joanne the opportunity to admit or deny the accusation during cross-examination.

8.  We note that, while both of these earlier decisions were made
(continued...)

For the reasons stated above, the motion of Joseph Noble pursuant to 28 U.S.C. § 2255 will be denied.

---

8.(...continued)
in the context of Noble's motion for a new trial for the government's alleged violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the "reasonable probability" standard used to establish materiality under <u>Brady</u>, is identical to the "reasonably probable" standard used to determine prejudice under Strickland—both require that petitioner's contention undermine confidence in the outcome.  See Strickland, 466 U.S. at 694; Kyles v. Whitley, 514 U.S. 419, 434 (1995).